IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA
NORTHEASTERN DIVISION

| | | |
|---|---|---|
| United States of America, | ) | |
| | ) | Case No. 2:09-cr-04 |
| Plaintiff, | ) | |
| | ) | **ORDER ON MOTION TO** |
| -vs- | ) | **DISMISS THE INDICTMENT** |
| | ) | |
| Roman Cavanaugh, Jr., | ) | |
| | ) | |
| Defendant. | ) | |

Before the Court is Defendant Roman Cavanaugh, Jr.'s motion to dismiss the indictment.

Cavanaugh raises three issues: (1) the indictment is fatally defective for failure to list an essential

element of the offense; (2) Section 117(a) of Title 18, United States Code, is unconstitutional as

it exceeds Congress's power; and (3) Section 117(a) of Title 18, United States Code, violates the

United States Constitution by permitting the use of uncounseled tribal court convictions to be

offered as substantive evidence to prove an essential element of a federal charge.  The Court held

a hearing and took arguments from the parties on November 24, 2009.  The Court, having

considered the briefs filed by the parties, the evidence at the hearing, and the arguments of

counsel, now issues this memorandum opinion and order.[1]

## SUMMARY OF DECISION

The indictment is sufficiently pled such that it would allow Defendant Cavanaugh to

prepare a defense and plead double jeopardy to any future prosecution for the alleged domestic

assault charge; therefore, Defendant's motion to dismiss on the ground that the indictment fails

to allege an essential element is **DENIED**.  See United States v. Mallen, 843 F.2d 1096, 1103

---

[1] The third issue raised by Defendant disposes of this case.  In light of the lack of legal
guidance construing the offense charged in this case or definitively resolving the issue posed, the
Court has addressed each of the issues for completeness of the record.

(8th Cir. 1988).  Unlike the Interstate Commerce Clause, which generally impacts state

regulation, the Indian Commerce Clause permits Congress to broadly regulate in the field of

Indian affairs, and Congress was within its power to enact 18 U.S.C. § 117 as it applies to Indian

country; therefore, Defendant's motion to dismiss on the ground of an invalid exercise of

Congress's power is **DENIED**. See United States v. Lara, 541 U.S. 193 (2004).  Finally, 18

U.S.C. § 117 as it applies in this case allows for the use of uncounseled tribal court convictions

to prove an essential element of the federal crime in violation of the United States Constitution;

therefore, Defendant's motion to dismiss the indictment on the ground it violates due process

and the Sixth Amendment right to counsel is **GRANTED**.  See United States v. Ant, 882 F.2d

1389 (9th Cir. 1989).

## ANALYSIS

I.    **SUFFICIENCY OF THE INDICTMENT**

Cavanaugh contends the indictment is fatally defective because it does not allege an

essential element of the offense - that is, the prior assault convictions were committed "against a

spouse or intimate partner."  The United States maintains that the indictment fully and fairly

apprises Cavanaugh of the charge against him, and if Cavanaugh believes the indictment lacks

specificity the appropriate relief is through a bill of particulars.

The indictment in this case charges as follows:

On or about July 7, 2008, in the District of North Dakota, in Indian country, and
within the exclusive jurisdiction of the United States,

ROMAN CAVANAUGH JR.,

a person who shares a child in common with and has cohabitated with Amanda L.
Luedke [sic] as a person similarly situated to a spouse, did commit a domestic assault
against Amanda L. Luedtke, which assault resulted in substantial bodily injury.

2

This domestic assault was committed after ROMAN CAVANAUGH JR. was convicted on at least two separate prior occasions in Spirit Lake Tribal Court for the following offenses that would be, if subject to Federal jurisdiction, any assault, sexual abuse, and serious violent felony:

1.   Domestic Abuse, Spirit Lake Tribal Court, Fort Totten, North Dakota, conviction entered on or about January 14, 2008;

2.   Two counts of Domestic Abuse, Spirit Lake Tribal Court, Fort Totten, North Dakota, conviction entered on or about April 6, 2005; and

3.   Domestic Abuse, Spirit Lake Tribal Court, Fort Totten, North Dakota, conviction entered on or about March 21, 2005:

In violation of Title 18, United States Code, Section 117(a)(1).

Rule 7(c), Fed. R. Crim. P., provides that an indictment must be "a plain, concise, and definite written statement of the essential facts constituting the offense charged." An indictment is sufficient if it allows a defendant to prepare a defense and plead double jeopardy to any future prosecution. United States v. Mallen, 843 F.2d 1096, 1103 (8th Cir. 1988). Even so, an indictment is insufficient as a matter of law if it does not allege an essential element of the crime charged. United States v. Jenkins-Watts, 574 F.3d 950, 968 (8th Cir. 2009). When determining whether an essential element has been omitted, a court must not insist that a particular word or phrase appear in the indictment. United States v. Redzic, 569 F.3d 841, 845 (8th Cir. 2009); Mallen, 843 F.2d at1102. Rather, an indictment is sufficiently pled if the element is alleged "in a form" that substantially states the element. Id.

The essential elements of the charged offense include: (1) a domestic assault, which is defined in 18 U.S.C. § 117(b); (2) committed within Indian country; and (3) by a person who has at least two prior convictions for assault, sexual abuse, or a serious violent felony against a

spouse or intimate partner.  Cavanaugh contends that to meet the pleading requirement of the

third element, the indictment must specifically allege that the predicate convictions involve a

spouse or intimate partner and that the failure to do so renders the indictment fatally flawed.

The indictment specifically alleges Cavanaugh has at least two prior convictions for

"domestic abuse" that would be, if subject to Federal jurisdiction, considered an assault, sexual

abuse, or serious violent felony.[2]  The indictment further lists the court of conviction as well as

the date of conviction.  It does not allege, however, that the predicate convictions occurred

between Cavanaugh and a spouse or intimate partner.  Nonetheless, a conviction for domestic

abuse necessarily implies an offense against a family or household member, including persons

involved in a romantic or sexual relationship.  See Cross v. Bruton, 249 F.3d 752, 753 n.2 (8th

Cir. 2001) (definition of "domestic abuse" under Minnesota law is an offense against persons

who are presently residing together or have resided together in the past or persons involved in a

significant romantic or sexual relationship); Black's Law Dictionary (8th ed. 2004) (defining

domestic violence/abuse as violence between members of a household; an assault or other

violent act committed by one member of a household against another).

While the Court agrees the United States would be required to establish at trial that

Cavanaugh has at least two prior convictions for assault, sexual abuse, or a serious violent felony

*against a spouse or intimate partner*, the Court finds the allegations are sufficiently clear to

allow Cavanaugh to prepare a defense and to plead double jeopardy to any future prosecution for

the alleged domestic assault occurring on or about July 7, 2008.  Mallen, 843 F.2d at 1103

---

[2] The statute requires at least two prior convictions in order for a person to qualify as a
habitual offender. The indictment in this case specifies three separate prior convictions in Spirit
Lake Tribal Court for domestic abuse.

(concluding the indictment is sufficient when it allows a defendant to prepare a defense and plead double jeopardy to any future prosecution).  Accordingly, Cavanaugh's motion to dismiss the indictment for failure to allege an essential element is DENIED.

## II.      CONGRESS'S POWER TO ENACT 18 U.S.C. § 117

Cavanaugh contends 18 U.S.C. § 117 is an unconstitutional exercise of power by Congress because it exceeds the powers granted to Congress under the Interstate Commerce Clause.  The United States argues in its brief that the Necessary and Proper Clause grants Congress the authority to enact the statute at issue.  At the hearing, the United States conceded the Necessary and Proper Clause is not an appropriate basis of authority in this case, but that the enactment is constitutional because it falls within Congress's power under the Indian Commerce Clause.

The United States Constitution grants Congress broad general powers to legislate with respect to Indian tribes.  United States v. Lara, 541 U.S. 193, 200 (2004).  The United States Supreme Court describes the powers as "plenary and exclusive."  Id.  The sources of the power are traditionally found in the Indian Commerce Clause, U.S. Const. Art. I, § 8, cl. 3, and the Treaty Clause, Art. II, § 2, cl. 2.  Id. (citations omitted).  The Supreme Court has said the function of the Indian Commerce Clause "is to provide Congress with plenary power to legislate in the field of Indian affairs."  Id. (citations omitted).  In contrast, the "treaty power" does not literally authorize Congress to legislate, but it can authorize Congress to address "matters" over which "Congress could not deal." Id. at 201 (quoting Missouri v. Holland, 252 U.S. 416, 433 (1920)).

Thus, "[f]rom the early days of the Republic, Congress has exercised its power over

commerce with the Indians in Indian country." <u>United States v. Houser</u>, 130 F.3d 867, 872 (9th

Cir. 1997), <u>cert. denied</u>, 524 U.S. 910  (citation omitted).  Congress's power under the Indian

Commerce Clause is not subject to the same restrictions applicable under the Interstate

Commerce Clause:

> It is . . . well established that the Interstate Commerce and Indian Commerce Clauses
> have very different applications.  In particular, while the Interstate Commerce Clause
> is concerned with maintaining free trade among the States even in the absence of
> implementing federal legislation, the central function of the Indian Commerce Clause
> is to provide Congress with plenary power to legislate in the field of Indian affairs.

<u>Id.</u> at 872-73 (quoting <u>Cotton Petroleum Corp. v. New Mexico</u>, 490 U.S. 163, 192 (1989)); <u>see</u>

<u>Seminole Tribe of Florida v. Florida</u>, 517 U.S. 44, 61-62 (1996) (explaining "the Indian

Commerce Clause accomplishes a greater transfer of power from the States to the Federal

Government than does the Interstate Commerce Clause," but also stating it can find "no

principled distinction" between the two commerce clauses for purposes of Congressional power

to abrogate states' Eleventh Amendment immunity).

  The Court has been unable to find any other courts that have construed 18 U.S.C. § 117.

Thus, before examining the statute at issue in this case, a look at the history of other federal

statutes governing Indian affairs provides helpful insight.  The first Indian Trade and Intercourse

Act, passed on July 22, 1790, provided that only the federal government could punish offenses

committed *against* Indians by "any citizen or inhabitant of the United States."  <u>United States v.</u>

<u>Wheeler</u>, 435 U.S. 313, 324 (1978). Notably, it did not mention crimes committed *by* Indians.

<u>Id.</u>  Approximately 27 years later, Congress extended federal criminal jurisdiction to crimes

committed within Indian country by any Indian, but excepted offenses committed in Indian

country by one Indian against another.  <u>Id.</u>  Then in 1834 Congress enacted the direct progenitor

6

of what is now known as the Indian Country Crimes Act or the General Crimes Act, now codified at 18 U.S.C. § 1152, which makes federal enclave criminal law generally applicable to crimes in Indian country.[3]  Id.  Again, Congress carried forward the "Indian-against-Indian" exception, recognizing the tribes have exclusive jurisdiction over such offenses.  Id.  In another recognition of tribal sovereignty, in 1854 Congress added another exception to federal jurisdiction by providing that federal courts would not try an Indian who has been punished by the local law of the tribe.  Id.  Thus, for many years Congress declined to deprive Indian tribes of their sovereign power to punish offenses by members of the tribes.

Congress modified its stance with regard to jurisdiction to prosecute Indian-against-Indian crime following the United States Supreme Court's decision in Ex Parte Crow Dog, 109 U.S. 556 (1883).  In Ex Parte Crow Dog, the Supreme Court decided the tribe possessed exclusive jurisdiction to try an Indian for the murder of another Indian in Indian country, which certainly was in line with the legislation in effect at that time.  However, Congress, in response to the Supreme Court's decision and "in order to curb a perceived lawlessness" in Indian country, enacted what is commonly referred to today as the Indian Major Crimes Act, codified at

---

[3] Today, 18 U.S.C. §1152 provides as follows:

Except as otherwise expressly provided by law, the general laws of the United States as to the punishment of offenses committed in any place within the sole and exclusive jurisdiction of the United States, except the District of Columbia, shall extend to the Indian country.

This section shall not extend to offenses committed by one Indian against the person or property of another Indian, nor to any Indian committing any offense in the Indian country who has been punished by the local law of the tribe, or to any case where, by treaty stipulations, the exclusive jurisdiction over such offenses is or may be secured to the Indian tribes respectively.

18 U.S.C. § 1153.  United States v. Wadena, 152 F.3d 831, 840 (8th Cir. 1998); see Keeble v. United States, 412 U.S. 205, 211-12 (1973) (quoting remarks of Rep. Cutcheon, 16 Cong. Rec. 936 (1885)) ("Congress extended federal jurisdiction to crimes committed by Indians on Indian land out of a conviction that many Indians would 'be civilized a great deal sooner by being put under (federal criminal) laws and taught to regard life and the personal property of others.'"); St. Cloud v. United States, 702 F.Supp. 1456, 1462 n.12 (D.S.D. Dec. 1, 1988) ("Congress' goal in passing the Major Crimes Act clearly was to prevent lawlessness in Indian lands and to plug gaps in criminal jurisdiction.").

The Indian Major Crimes Act provides the federal courts with exclusive jurisdiction over certain enumerated crimes committed in Indian country.[4]  It does not contain an exception for Indians punished under tribal law.  Today, the Indian Major Crimes Act grants federal jurisdiction for 15 enumerated crimes.  18 U.S.C. § 1153.

---

[4]The offenses listed in 18 U.S.C. § 1153 have been expanded over the years.  Today, the statute provides as follows:

**(a)** Any Indian who commits against the person or property of another Indian or other person any of the following offenses, namely, murder, manslaughter, kidnapping, maiming, a felony under chapter 109A, incest, assault with intent to commit murder, assault with a dangerous weapon, assault resulting in serious bodily injury (as defined in section 1365 of this title), an assault against an individual who has not attained the age of 16 years, felony child abuse or neglect, arson, burglary, robbery, and a felony under section 661 of this title within the Indian country, shall be subject to the same law and penalties as all other persons committing any of the above offenses, within the exclusive jurisdiction of the United States.

**(b)** Any offense referred to in subsection (a) of this section that is not defined and punished by Federal law in force within the exclusive jurisdiction of the United States shall be defined and punished in accordance with the laws of the State in which such offense was committed as are in force at the time of such offense.

Additionally, Congress enacted the Assimilative Crimes Act, 18 U.S.C. § 13, in order to fill another void in federal criminal law. [5] United States v. Howard, 654 F.2d 522, 524 (8th Cir. 1981).  Thus, where there does not exist any congressional enactment to punish an act or omission on federal enclaves, including Indian country, state law may be "assimilated."  Id. While the Assimilative Crimes Act may not be used to redefine federal criminal law, it may be used to punish conduct violating state law on federal land.  Id.; see Williams v. United States, 327 U.S. 711 (1946).   The Supreme Court has declared the statute's purpose is to conform the criminal law of federal enclaves to that of local law except in cases of specific federal crimes. Acunia v. United States, 404 F.2d 140, 142 (9th Cir. 1968) (citing United States v. Sharpnack, 355 U.S. 286, 289-95 (1958)).

Each of these three statutes has been upheld against constitutional challenges.  See e.g., United States v. Antelope, 430 U.S. 641 (1977) (the Indian Major Crimes Act does not violate equal protection); Keeble v. United States, 412 U.S. 205, 210 n.9 (1973) (reiterating the constitutionality of the Major Crimes Act); Sharpnack, 355 U.S. at 296-97 (upholding the constitutionality of the Assimilative Crimes Act); Houser, 130 F.3d at 873 (Congress has the

---

[5] 18 U.S.C. § 13 provides, in relevant part:

**(a)** Whoever within or upon any of the places now existing or hereafter reserved or acquired as provided in section 7 of this title, or on, above, or below any portion of the territorial sea of the United States not within the jurisdiction of any State, Commonwealth, territory, possession, or district is guilty of any act or omission which, although not made punishable by any enactment of Congress, would be punishable if committed or omitted within the jurisdiction of the State, Territory, Possession, or District in which such place is situated, by the laws thereof in force at the time of such act or omission, shall be guilty of a like offense and subject to a like punishment.

authority under the Indian Commerce Clause to pass 18 U.S.C. § 1152); <u>United States v. Keys</u>, 103 F.3d 758, 762 (9th Cir. 1996) (holding that "[j]ust as the Indian Major Crime Act is within Congress's authority to regulate Indian criminal activity in Indian Country, the Federal Enclaves Act is within Congress's power to regulate crimes committed by or against Indians in Indian country."); <u>United States v. Lomayaoma</u>, 86 F.3d 142, 146 (9th Cir. 1996), <u>cert denied</u>, 519 U.S. 909 (the Indian Major Crimes Act was a constitutional exercise of power by Congress under the Indian Commerce Clause).

With this background in mind, the offense at issue in this case, domestic assault by a habitual offender, does not fall within the offenses listed in the Indian Major Crimes Act, nor is it a federal statute of general applicability. Federal statutes of general applicability are those in which the situs of the offense is not an element of the crime. <u>Wadena</u>, 152 F.3d at 841; <u>United States v. Pemberton</u>, 121 F.3d 1157, 1164 (8th Cir. 1997) (describing crimes of general applicability as those that Congress has declared illegal regardless of where they occur). Instead, 18 U.S.C. § 117 applies only (1) to domestic assault committed within the special maritime and territorial jurisdiction of the United States or Indian country and (2) by a person with at least two prior convictions for assault, sexual abuse, or a serious violent felony. 18 U.S.C. § 117(a).

In challenging the constitutionality of 18 U.S.C. § 117, Cavanaugh relies upon Supreme Court cases striking down federal laws not meeting the requirements of the Interstate Commerce Clause. Those cases include <u>United States v. Morrison</u>, 529 U.S. 598 (2000) (the Violence Against Women Act, 42 U.S.C. § 13981), and <u>United States v. Lopez</u>, 514 U.S. 549 (1995) (the Gun-Free School Zones Act of 1990, 18 U.S.C. § 922(g)). However, <u>Morrison</u> and <u>Lopez</u> have nothing to do with Indian country and relationships between the United States and various tribes.

If the statute at issue was one of general applicability, the Court agrees with Cavanaugh that the focus would be on the Interstate Commerce Clause and those cases Cavanaugh cites. But, as evident in the other statutes passed by Congress regulating Indian affairs, Indian tribes have a unique relationship with the federal government.  Unlike states, Indian tribes are "domestic dependent nations" - that is they "do not have complete sovereignty, have no external sovereignty, and have only as much internal sovereignty as has not been relinquished by them by treaty or explicitly taken by Act of the United States Congress."  United States v. Consol. Wounded Knee Cases, 389 F.Supp. 235, 240 (D. Neb. Jan. 17, 1975).   Unlike states, Indian tribes had no connection with and no involvement in the drafting and adoption of the United States Constitution and the Bill of Rights.  United States v. Gregg, No. CR 04-30068, 2005 WL 1806345, at *1 (D.S.D. July 27, 2005).  And finally and most importantly for purposes of this case, unlike the Interstate Commerce Clause, which is limited to specific areas of commerce, the Indian Commerce Clause permits Congress to regulate broadly and with exclusive plenary power in the field of Indian affairs. Lara, 541 U.S. at 200.

The most recent United States Supreme Court case analyzing Congress's power under the Indian Commerce Clause upheld Congress's authority to adjust tribal sovereignty in criminal matters without considering the traditional three categories of activities Congress may regulate under the Interstate Commerce Clause.  Lara, 541 U.S. at 200-07.  The Court thus finds Lopez and Morrison inapplicable as they addressed general applicability statutes.  If history is any indication, if it is within Congress's plenary power to regulate crimes committed by or against an Indian in Indian country, then Congress surely did not exceed its power under the Indian Commerce Clause in enacting 18 U.S.C. § 117, as applied to Indian country.  After carefully

considering the unique status of Indian tribes, the function of the Indian Commerce Clause, and Congress's plenary power to regulate in Indian country, Congress was within its power to enact 18 U.S.C. § 117.  Cavanaugh's motion to dismiss the indictment on the ground that Congress exceeded its authority to enact 18 U.S.C. § 117 is DENIED.

## III.    PRIOR UNCOUNSELED TRIBAL COURT CONVICTIONS

The indictment alleges Cavanaugh was convicted in tribal court on three prior occasions for domestic abuse, and, therefore, qualifies under federal law as a habitual offender for the alleged domestic assault that occurred on or about July 7, 2008, in Indian country.  Cavanaugh asserts it is a violation of his right to due process to allow uncounseled tribal court convictions to be used as predicate offenses to support a federal charge.  The United States contends the language of 18 U.S.C. § 117(a) does not require that a person be represented by counsel in the underlying conviction and this Court should not read a requirement into the statute that is not there.  The United States further argues due process is not implicated because the tribal court convictions complied with the Spirit Lake Code and the Indian Civil Rights Act.

### 1.    Relationship Between Federal Court and Tribal Court

In order to give due consideration to the merits of Cavanaugh's argument, the Court believes a review of the historical background of tribal sovereignty and the tribal justice system is important.  Tribal governments have existed in one form or another for centuries.  In the late 1800s, the Bureau of Indian Affairs established the Courts of Indian Offenses, or "C.F.R. courts." Vincent C. Milani, The Right to Counsel in Native American Indian Tribal Courts; Tribal Sovereignty & Congressional Control, 31 Am. Crim. L. Rev. 1279, 1281 (1994).  The judges were Indians appointed by the BIA and the purpose of the courts was to promote

12

acculturation on the reservation and to help "civilize" the Indians.  Id.  At this time, federal

policy with regard to Indians was one of assimilation. Then the Indian Reorganization Act of

1934 was passed, which paved the way for tribes to develop tribal courts and phase out C.F.R.

courts.  Id.  The Indian Reorganization Act "signaled a major shift in federal Indian policy from

assimilation to self-determination."  Id.  As a result, tribal court judges became "responsible" to

the tribe instead of the BIA.  Id. The tribes, therefore, were given greater autonomy to develop

their own tribal judicial systems.  Id. While the modern version of tribal courts has moved more

closely toward the Anglo-American concept of a court, their history, nature, jurisdiction, and

relationship to the federal courts continue to set them apart from other American courts.

Courts long ago recognized the "quasi-sovereign" status of Indian tribes when Chief

Justice John Marshall declared Indian tribes "domestic dependent nations."  Cherokee Nation v.

Georgia, 30 U.S. 1, 16 (1831).  This dependent status led to the emergence of plenary power by

Congress over Indian affairs while still acknowledging a tribe's sovereignty.  As a limited

sovereign, Indian tribes have retained certain "inherent powers."  United States v. Wheeler, 435

U.S. 313, 326 (1978) (explaining that "the sovereign power of a tribe to prosecute its members

for tribal offenses clearly does not fall within that part of sovereignty which the Indians

explicitly lost by virtue of their dependent status.").  As a consequence, tribal courts have

jurisdiction over many misdemeanor crimes committed on tribal lands by one Indian against

another Indian.

Tribal courts, however, do not have jurisdiction over crimes committed by non-Indians,

even if the crime occurs within tribal lands.  See Greywater v. Joshua, 846 F.2d 486, 493 (8th

Cir. 1988) (tribal court's exercise of criminal jurisdiction is limited to governing the internal

rules by which tribal members live and enforcing criminal laws against only tribal members);

Am.Jur. Indians <u>Offenses By or Against Non-Indians</u> § 143 (citing <u>Oliphant v. Suquamish Indian</u>

<u>Tribe</u>, 435 U.S. 191 (1978)).  Congress has imposed other jurisdictional limitations, including

the Indian Major Crimes Act, 18 U.S.C. § 1153, which, as discussed earlier, grants to the federal

courts exclusive jurisdiction over certain enumerated crimes committed on tribal lands by and

against Indians, and the Indian Civil Rights Act of 1968, which limits the maximum penalty that

tribal courts can impose upon criminal defendants, 25 U.S.C. § 1302(7).  Thus, unlike most

Americans, who face federal prosecution only for offenses that have a particular federal nexus,

American Indians in Indian country are subject to federal prosecution for numerous felonies,

such as murder, incest, assault, child abuse or neglect, arson, burglary, robbery, which would not

rise to the level of federal prosecution outside of Indian country.  <u>See</u> 18 U.S.C. § 1153.

Even with the limitations, Congress has acknowledged the importance of tribal justice

systems. 25 U.S.C. § 3651(5) - (6) (declaring tribal justice systems "an essential part of tribal

governments" and "the most appropriate forums for the adjudication of disputes affecting

personal and property rights on Native lands.").  While recognizing the significance of tribal

courts, Congressional findings in 2000 indicate "the rate of violent crime committed in Indian

country is approximately twice the rate of violent crime committed in the United States as a

whole."  25 U.S.C. § 3651(3).  The Department of Justice estimates that American Indians

experience violent crime at the rate of about one violent crime in every eight residents. Lawrence

A. Greenfeld and Steven K. Smith, <u>American Indians & Crime</u>, Bureau of Justice Statistics,

United States Department of Justice (Feb. 1999).  This compares to a rate of one in sixteen for

African Americans; one in twenty for whites; and one in 34 for Asians.  <u>Id.</u>

Additionally, there is little dispute that alcohol and drug abuse in Indian country is widespread.  Over half of American Indian victims said the offender was under the influence of alcohol, drugs, or both. Id.  Moreover, an estimated three in four American Indian victims of family violence reported they believed the offender was drinking at the time of the offense.  Id. The rate of child abuse and neglect is also higher in Indian country. On a per capita basis, the Department of Justice estimates there is one substantiated report of child abuse or neglect for every 30 American Indian children under the age of 14.  Id.  This compares with one child victim for every 58 children of any race.  Id. Thus, while Congress's self-determination policy is laudable and the importance of the tribal courts is not to be minimized, it is apparent that systemic problems of a social and political nature continue to plague Indian Country.  American Indian tribes continue to remain in dire need of economic rehabilitation as well as assistance in crime control and social programming. A fully functioning tribal court with a strong and independent judiciary is an integral component of addressing these social ills.

Furthermore, Congress has recognized that the operation of tribal courts is impaired, both in terms of technical and legal assistance, due to lack of adequate funding and coordination.  25 U.S.C. § 3651(8).  Consequently, the development of the jurisdictional scheme we have today creates what is, in effect, a partnership between federal courts and tribal courts for prosecuting crimes committed in Indian country.  Essentially, federal courts handle the "major" crimes, i.e. felonies while tribal courts handle the lower level offenses.  Tribal courts retain jurisdiction over a majority of the offenses committed in Indian country.  Because of the dichotomy Congress has created, the two justice systems - tribal court and federal court - function mostly independently.

In the Court's experience, the tribal courts are overwhelmed by problems rising out of a

lack of adequate funding, a lack of adequately trained personnel, and a lack of true judicial independence.  This gives rise to a justice system that provides uneven legal services, at best. The problem is exacerbated by a lack of adequate resources for treatment, rehabilitation, and even incarceration.  Many tribal jails are antiquated facilities suitable only for warehousing inmates.  To describe the overall state of the facilities available to the tribal courts as wanting is an understatement.  The Court recognizes that many of the tribes have taken herculean efforts to make do with judicial resources that state and federal courts would deem create a constitutional crisis.  In short, many tribal courts are so short of resources and personnel that they constitute a national embarrassment.  Given the lack of economic activity on many reservations, the tax base is inadequate to solve the institutional problems, thus any solution must necessarily involve a greater commitment on the part of the United States to see that a functioning tribal court system exists throughout Indian country.  Where justice is uncertain, delayed, or denied entirely, it is completely predictable that economic stability will be difficult to obtain or maintain.  The plain truth is that business owners will not locate businesses in places where the communities lack general order or where predictability of results in contractual or civil suits does not exist.  If anyone intends to address the fundamental needs in Indian county, it is essential that the court system be one of the first areas addressed.  Without a fully functional judiciary, with clear jurisdictional lines and uniform quality, social and economic progress will remain elusive.

      2.     *The United States Constitution and Tribal Court*

When an offense is committed in Indian country and jurisdiction is determined, few constitutional problems arise so long as the prosecution and conviction remain exclusively in either tribal or federal court.  However, significant constitutional issues tend to arise when tribal

16

court convictions cross over into the federal judicial system.  While many protections guaranteed to Americans in the Bill of Rights have been extended to American Indians in tribal court through the Indian Civil Rights Act, 25 U.S.C. § 1302, one notable exception is the right to court-appointed counsel.[6]  Over forty years ago, the United States Supreme Court decided the Sixth Amendment requires courts to furnish counsel for indigent criminal defendants in felony cases.  Gideon v. Wainwright, 372 U.S. 335 (1963).  Since then, the Supreme Court clarified that defense counsel must be appointed in any criminal prosecution, whether classified as petty, misdemeanor, or felony, that actually leads to imprisonment if even for a brief period. Argersinger v. Hamlin, 407 U.S. 25, 37 (1972); see Scott v. Illinois, 440 U.S. 367, 373-74 (1979) (holding a defendant is not entitled to counsel merely because the criminal charge he faces authorizes imprisonment; rather, the right to counsel applies only when the defendant is actually sentenced to prison).

Even though Indians are citizens of the United States, the United States Constitution does not apply in tribal courts. Felix Cohen, Handbook on Federal Indian Law § 4.01[2][a] (2005); Talton v. Mayes, 163 U.S. 376, 384 (1896); Tom v. Sutton, 533 F.2d 1101, 1102-03 (9th Cir. 1976) (due to their sovereign status, Indian tribes are vested with the inherent power to adopt their own constitution).  Instead, the Indian Civil Rights Act or tribal law governs tribal proceedings.  The Indian Civil Rights Act provides only that no tribe shall "deny to any person in a criminal proceeding the right . . . *at his own expense* to have the assistance of counsel."  25

---

[6] The Indian Civil Rights Act also does not prohibit the establishment of religion, nor does it require jury trials in civil cases.  Santa Clara Pueblo v. Martinez, 436 U.S. 49, 63 (1978). Congress intentionally did not extend in wholesale fashion the Bill of Rights, as had initially been proposed, in order to recognize the commitment to the goal of tribal self-determination and to fit the "unique political, cultural, and economic needs of tribal governments."  Id. at 62.

U.S.C. § 1302(6) (emphasis added).  Consequently, unless tribal law provides otherwise, an indigent defendant in tribal court has no right to a court-appointed attorney.

At least one legal scholar has pondered whether Congress, if authorized to, ought to impose a right to counsel in tribal courts. Vincent C. Milani, <u>The Right to Counsel in Native American Indian Tribal Courts; Tribal Sovereignly and Congressional Control</u>, 31 Am. Crim. L. Rev. 1279, 1291 (1994).  One view is that Congressional restraint ought to be exercised out of concern for tribal sovereignty, recognition of the differences among numerous tribes, and the limitations placed upon tribal responsiveness to the needs of their members by insufficient funding.  <u>Id.</u> at 1291-92.  This article was written at a time when the practice of most federal courts was to deny the admission of uncounseled tribal court convictions as substantive evidence of guilt or as a factor to enhance sentence in a subsequent federal proceeding.  <u>Id.</u> at 1300.

 Today, the Sentencing Guidelines allow for consideration of tribal court convictions when determining the adequacy of criminal history and courts have the discretion to consider uncounseled tribal convictions when sentencing a defendant in federal court.  <u>See</u> USSG § 4A1.2(I); <u>Nichols v. United States</u>, 511 U.S. 738 (1994) (uncounseled misdemeanor conviction, which did not result in a prison sentence, can be used to enhance a defendant's punishment for a subsequent conviction); <u>United States v. Drapeau</u>, 110 F.3d 618, 620 (8th Cir. 1997) (concluding district court appropriately applied an upward departure to reflect the defendant's tribal offenses).

The fact that Congress has left the tribes with exclusive jurisdiction over misdemeanor offenses committed by one Indian against another Indian in Indian country is evidence that it

presumes tribal courts exist and are competent to prosecute misdemeanors.[7]  On the other hand, felony offenses by Indians against Indians are handled exclusively by the United States.  Thus, Congress has created a scheme, which, in part, ensures that an Indian charged with a felony is afforded all of the protections of the United States Constitution.

    3.       *Tribal Court Convictions under 18 U.S.C. § 117*

This background now brings us to the remaining issue presently before the Court: Whether prior uncounseled misdemeanor tribal court convictions can be used as substantive evidence to prove an essential element of a federal crime.  The crime at issue, domestic assault by an habitual offender, states, in relevant part:

> Any person who commits a domestic assault within the special maritime and territorial jurisdiction of the United States or Indian country and who has a final conviction on at least 2 separate prior occasions in Federal, State, or Indian tribal court proceedings for offenses that would be, if subject to Federal jurisdiction -
>
> (1)      any assault, sexual abuse, or serious violent felony against a spouse or intimate partner, or
>
> (2)      an offense under chapter 110A, . .

18 U.S.C. § 117(a).  In this case, the indictment alleges Cavanaugh has three prior convictions in Spirit Lake Tribal Court for domestic abuse.  The Spirit Lake Nation Law and Order Code does not authorize court-appointed counsel at tribal expense.  (Doc. #51-2).  Instead, defendants in Spirit Lake Tribal Court are advised that they have the right to an attorney at their own expense, which is in accordance with the Indian Civil Rights Act.  (<u>Id.</u>; Doc. 51-3).  Cavanaugh signed a written "Statement of Rights" in which he acknowledged he was advised of his right to counsel

---

[7] The maximum penalty tribal courts may impose upon criminal defendants is fine of $5,000, one year in prison, or both. 25 U.S.C. § 1302(7).

19

at his expense.  Thus, it is clear Cavanaugh understood he was entitled to have an attorney

represent him at his own expense.  There is no evidence to indicate Cavanaugh's tribal court

convictions were invalid under tribal law or the Indian Civil Rights Act.  The issue thus is

whether a tribal court conviction that complies with tribal law and the Indian Civil Rights Act,

but not the United States Constitution, can be used to establish an essential element of a federal

crime. [8]  The Court finds it cannot.

The United States argues Cavanaugh's valid waiver of the right to counsel in tribal court

renders the convictions valid for purposes of the federal offense.  But, the Sixth Amendment

gives a criminal defendant the right to counsel and the corresponding right to waive the right to

counsel and proceed pro se.  United States v. Armstrong, 554 F.3d 1159, 1165 (8th Cir. 2009).

A waiver of the right to counsel "must be voluntary, intelligent, and knowing."  Id.  This

standard is met if a court informs the defendant of the dangers and disadvantages of self-

representation and the record evidences the defendant knew and understood the disadvantages.

Id.

The standard for waiver of the right to counsel in federal court was not met in the tribal

court proceedings because Cavanaugh had no right to a court-appointed lawyer; therefore, his

only option was to come up with the money to pay a lawyer or proceed pro se.  In contrast, the

federal system does not force an indigent defendant to proceed pro se.  As aptly noted by the

---

[8] Neither party has expressly indicated whether the tribal court sentenced Cavanaugh to a term of imprisonment for any of the three domestic abuse offenses.  The Sixth Amendment right to counsel attaches when a defendant is actually imprisoned.  Argersinger 407 U.S. at 37; Scott 440 U.S. at 373-74 (1979).  Because the United States has not argued otherwise, the Court assumes the tribal court convictions would be constitutionally infirm if obtained in state or federal court.

United States Supreme Court: "[R]eason and reflection require us to recognize that in our adversary system of criminal justice, any person haled into court, who is too poor to hire a lawyer, cannot be assured a fair trial unless counsel is provided for him. . . . That government hires lawyers to prosecute and defendants who have money hire lawyers to defend are the strongest indications of the widespread belief that lawyers in criminal courts are necessities, not luxuries." Gideon, 372 U.S. at 344.  The issue before the Court is not to question the validity of the tribal court proceedings or question the tribal justice system, but instead to evaluate whether the convictions satisfy constitutional requirements for use in a federal prosecution in federal court.

The Court finds the analysis of the Ninth Circuit in United States v. Ant, 882 F.2d 1389 (9th Cir. 1989) persuasive in this case.  In Ant, the defendant, an American Indian, pled guilty to assault and battery in tribal court and was sentenced to six months in jail.  The defendant was not represented by a lawyer, although he was likely advised of his right to a lawyer.  Subsequently, a federal indictment charged the defendant with voluntary manslaughter.  The defendant moved to suppress his confession and guilty plea from tribal court, arguing exclusion was appropriate because his right to counsel under the Sixth Amendment was violated and his confession was involuntary in violation of the Fifth Amendment.  The Ninth Circuit analyzed whether the guilty plea was made under conditions consistent with the United States Constitution. 882 F.2d at 1393-94.  Because the defendant was not provided the opportunity for court-appointed counsel in tribal court and thus the proceedings did not meet constitutional requirements, the Ninth Circuit suppressed the uncounseled tribal court guilty plea.  Id. at 1395-96.

The United States attempts to distinguish Ant on the basis that the same offense was

involved in both tribal court and federal court.  The Court does not find this distinction

significant.  The argument, however, highlights a primary issue in this case.  The uncounseled

tribal court convictions in the present case are necessary to prove  an essential element of a

federal crime.  They are not being offered in this case for purposes of sentencing enhancement,

for purposes of impeachment, or as evidence under Fed. R. Evid. 404(b).  The Court is unable to

contemplate another situation in which it would permit a party to introduce evidence obtained in

violation of the United States Constitution and allow it to be offered as substantive evidence to

prove an essential element of a federal offense.  Adherence to the requirements of the United

States Constitution is just as compelling as the circumstances in Ant.  To permit a conviction that

violates the Sixth Amendment to be used against a person to support guilt for another offense

would erode the very principle set forth in Gideon.  United States v. Tucker, 404 U.S. 443, 449

(1972); Burgett v. Texas, 389 U.S. 109, 114 (1967).

The United States also points to the plain language of the federal statute at issue in this

case and contrasts it with the Gun Control Act of 1968, 18 U.S.C. § 922(g)(9), which prohibits

any person convicted in any court of a misdemeanor crime of domestic violence from possessing

a firearm. In defining the term  "misdemeanor crime of domestic violence", the Gun Control Act

does not allow an earlier misdemeanor conviction to count as a predicate offense unless the

defendant was represented by counsel or knowingly and intelligently waived the right to counsel.

18 U.S.C. 921(a)(33)(B)(i).

The Court acknowledges that when Congress passed 18 U.S.C. § 117, Congress did not

place the same restrictions of requiring legal representation or waiver of the right to a lawyer

before the conviction could count as a predicate offense.  The legislative history indicates the

federal offense was created, in part, to prevent serious injury or death of American Indian women and to allow tribal court convictions to count for purposes of a federal prosecution, particularly because the Indian Major Crimes Act does not allow federal prosecutors to prosecute domestic violence assaults unless they rise to the level of serious bodily injury or death.  151 Cong. Rec. S4873-74 (May 10, 2005).

Nevertheless, in exercising its powers, Congress is not free to ignore constitutional rights.  See Bridges v. Wixon, 326 U.S. 135, 161 (1945) (noting Congress may not ignore resident aliens' constitutional rights in the exercise of its plenary power of deportation).  The constitutionality of a federal law is left to the Courts, and ultimately resides in the United State Supreme Court.  Sable Communications of California, Inc. v. F.C.C., 492 U.S. 115, 129 (1989) ("To the extent that the federal parties suggest we should defer to Congress' conclusion about an issue of constitutional law, our answer is that while we do not ignore it, it is our task in the end to decide whether Congress has violated the Constitution").  Thus, to the extent the United States contends the statute is constitutional because Congress had a legitimate reason for filling the gap between tribal and federal law in the area of domestic violence, the courts are not foreclosed from conducting an independent analysis of the facts bearing on an issue of constitutional law.  The Court, in its independent view finds the introduction of uncounseled tribal court convictions in federal court as proof of an essential element of a federal crime violate a defendant's right to counsel and due process.  Thus, to the extent that 18 U.S.C. § 117 allows for the use of such convictions in such a manner, it is unconstitutional.

The Court's decision today does not seek to bind upon tribal courts the protections of the Sixth Amendment.  It simply stands for the proposition that tribal convictions introduced in a

federal court to prove an essential element of a federal crime must be in compliance with the United States Constitution.  Such a result not only complies with the protections guaranteed to individual citizens by the Constitution but it puts all defendants indicted under 18 U.S.C. § 117 on the same playing field.  As it stands now, American Indians are the only group of defendants that could face conviction under 18 U.S.C. § 117(a) as a result of underlying convictions for which they had no right to court-appointed counsel.  While recognizing the unique status of tribes and tribal sovereignty, this Court does not believe it must give deference to tribal convictions if the result is to accord American Indians less than the minimum protections guaranteed by the Constitution.  After all, American Indians indicted under the Indian Major Crimes Act enjoy the same procedural benefits and privileges as all other persons within federal jurisdiction, so should they under 18 U.S.C. § 117(a).  There is simply no compelling reason to sacrifice constitutional order by allowing an essential element to be established by use of an uncounseled conviction solely because the defendant happens to be Indian.  In the courts of the United States a person's constitutional rights should not be limited merely by accident of birth.

For the foregoing reasons, Cavanaugh's motion to dismiss the indictment on the ground that the use of prior uncounseled tribal court convictions as substantive evidence to prove an essential element of the crime violates the Constitution is GRANTED.

## <u>CONCLUSION</u>

For the foregoing reasons, Cavanaugh's motion to dismiss the indictment is denied in part and granted in part.  Because the Court finds, under the circumstances of this case, it would violate the Constitution to allow uncounseled tribal court conviction to be used as substantive evidence to prove an element of the federal charge, the indictment against Cavanaugh is hereby

24

DISMISSED.

**IT IS SO ORDERED.**

Dated this 18th day of December, 2009.

_/s/   Ralph R. Erickson_
Ralph R. Erickson, Chief Judge
United States District Court